IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

MELANIE JOHNSTON,

              Plaintiff,

v.

PYE CARS OF DALTON, INC.
and LIONEL F. PYE, JR. aka
"JOHNNY PYE",

              Defendants.

CIVIL NO. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Melanie Johnston ("Johnston") files the following Complaint against Pye Cars of Dalton, Inc. ("Pye Cars") dba Pye Kia and Lionel F. Pye, Jr. aka "Johnny Pye" ("Mr. Pye") (Pye Cars and Mr. Pye, collectively, "Defendants"), seeking damages and declaratory and injunctive relief as set forth below.

### Nature of Complaint

1.

This action is brought pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA") seeking declaratory relief and actual and liquidated damages for Defendants' joint and willful failure to pay federally mandated overtime wages to Plaintiff Melanie Johnston during her employment

1

with Pye Cars.  This action is also brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") seeking back pay, front pay in lieu of reinstatement, compensatory and punitive damages and other available relief.  This action also seeks compensatory and punitive damages under state law for intentional infliction of emotional distress, negligent retention, and assault and battery against Pye Cars, based on the sexual harassment, offensive touching, lewd comments and boorish treatment that Ms. Johnston received from co-worker Greg Flower, with full management of Pye Cars' management officials, during her employment with Pye Cars.

## The Parties

2.

Ms. Johnston is a citizen of the United States and a resident of the State of Georgia residing in Whitfield County.  She is a former employee of Defendant Pye Cars.  Ms. Johnston submits herself to the jurisdiction of this Court.

3.

Defendant Pye Cars is a corporation organized under the laws of the State of Georgia with its principal place of business in Dalton, Georgia.  Pye Cars may be served with process through its registered agent for service of process, L.F. Pye, Jr., 1831 Wood Valley Drive, Dalton, Georgia  30720.

4.

Defendant Mr. Pye is an individual citizen of the United States and of the State of Georgia residing in Whitfield County, Georgia.  Mr. Pye is subject to personal service of process wherever he may be found, or abode service under Federal Rule of Civil Procedure 4(e)(2)(B) at his residence.

5.

On information and belief, Defendant Mr. Pye is the majority or sole owner of Pye Cars.

## Jurisdiction and Venue

6.

Ms. Johnston's FLSA and Title VII claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. §2000e-5(f)(3) and 29 U.S.C. § 216(b).  This court has supplemental jurisdiction over Ms. Johnston's state law claims against the Pye Dealerships and Mr. Pye pursuant to 28 U.S.C. § 1367.

7.

This Court has personal jurisdiction over Pye Cars because it is organized under the laws of Georgia and has its principal place of business in Georgia.

8.

This Court has personal jurisdiction over Mr. Pye because he is a resident of the State of Georgia, Whitfield County.

9.

This is an appropriate venue for all of Ms. Johnston's claims pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §2000e-5(f)(3) as the judicial district in which the Defendants reside and in which the events and omissions, including unlawful employment acts, giving rise to Ms. Johnston's claims occurred.

## **Administrative Proceedings**

10.

Ms. Johnston filed a charge of discrimination with the EEOC on June 4, 2018 in relation to claims for sexual harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The EEOC issued a Notice of Right to Sue to Ms. Johnston on March 20, 2019, and she files this Complaint within 90 days after receipt of such Notice.

## **The Facts**

### Ms. Johnston's Employment By Defendants and Her Compensation

11.

Ms. Johnston began her employment with Pye Cars in August 2017 as an hourly receptionist.  She worked briefly as receptionist at the nearby Honda dealership subject to common ownership and control with Pye Cars.   As receptionist, her primary duties consisted of answering phones and greeting customers who entered the dealership.

12.

Ms. Johnston worked as a receptionist for Pye Cars from late August 2017 until the termination of her employment on or about March 22, 2018 (the time period from August 2017 through March 2018 is referred to hereinafter as "the relevant time period").

13.

Ms. Johnston was, at all times relevant hereto, an "employee" within the meaning of the FLSA.

14.

Pye Cars is a private employer engaged in interstate commerce, and its gross revenues exceed $500,000 per year.

15.

Pye Cars is an "employer" under the FLSA, 29 U.S.C. § 203(d).

16.

Defendant Mr. Pye exercises operational control over Pye Cars.

17.

Because Mr. Pye exercises operational control over Pye Cars, Mr. Pye is also an "employer" under the FLSA, 29 U.S.C. § 203(d), and is jointly and severally liable for unpaid wages and other damages due to Ms. Johnston.

18.

As an employer under the FLSA, Pye Cars is subject to the minimum wage and maximum hours requirements of the FLSA, 29 U.S.C. §§ 206-07.

19.

Ms. Johnston was employed by Pye Cars throughout the relevant time period.

20.

Defendant Mr. Pye employed Ms. Johnston throughout the relevant time period.

21.

Defendants jointly employed Plaintiff throughout the relevant time period.

22.

Ms. Johnston's primary duties throughout the relevant time period did not include supervision of any other employees, and did not include the exercise of

independent judgment or discretion as to matters of significance.  As such, Ms.

Johnston's duties did not qualify her for treatment as exempt under the FLSA.

23.

Ms. Johnston was entitled to receive at least the federal minimum wage of

$7.25 for each hour worked and premium pay at one and one half times her regular

rate of pay for all hours worked in excess of 40 during each workweek.

24.

Ms. Johnston regularly worked in excess of 40 hours each work week.  She

typically worked five to six days per week, approximately 10-12 hours per day.

25.

Defendants paid Ms. Johnston an hourly rate of $9 per hour.

26.

For the first several months of her employment, Ms. Johnston often worked

through lunch even though she was required to clock out.

27.

Defendant Mr. Pye told Ms. Johnston that she should never leave the front

desk unattended.

28.

She often did not have anyone to relieve her at the front desk at lunch.

29.

Defendant Mr. Pye and other management employees instructed Ms. Johnston at the time of her hire that she must clock out for an hour at lunch time.

30.

Because she was not allowed to leave the front desk unattended, Ms. Johnston would stay at the desk through her lunch period, often eating her lunch at the desk while working. However, because she had been required to clock out, she was working off the clock during those lunch periods.

31.

Because Ms. Johnston regularly worked more than 40 hours per week, all of the hours she worked off the clock should have been compensated at the overtime premium of one and one half times her regular rate of pay.

32.

Defendants did not pay Ms. Johnston anything (an overtime rate, a regular rate, or otherwise) for the hours she worked off the clock.

33.

Numerous other employees, including members of management including but not limited to Mr. Pye, knew that Ms. Johnston was working off the clock, but Defendants still failed or refused to compensate her for those hours.

34.

Ms. Johnston regularly worked an hour off the clock every day, with Defendants' knowledge, for at least the first several months of her employment.

35.

Eventually, a supervisor instructed Ms. Johnston that she should not clock out if she was unable to leave the receptionist desk at lunch.

36.

Thus, for the latter part of her employment, from approximately mid-November 2017 through her termination in mid-March 2018, Ms. Johnston recorded on her time cards that she worked through lunch.

<u>Salesman Greg Flower's Unlawful Treatment of Ms. Johnston</u>

37.

A salesman named Greg Flower subjected Ms. Johnston to unwelcome verbal and physical harassment based on her sex throughout the relevant time period.

38.

Mr. Flower regularly made comments about Ms. Johnston's body and about her clothes.

39.

Mr. Flower propositioned Ms. Johnston for sex.

40.

Mr. Flower offered to "help" Ms. Johnston with sex and with "relief" of stress and tension.

41.

Mr. Flower told Ms. Johnston that he wanted to have sex with her.

42.

On a cold day when Ms. Johnston was standing outside of the dealership, Mr. Flower told her that he wanted to warm her up.

43.

Mr. Flower made sex-related comments to Ms. Johnston on a near-daily basis.

44.

On at least one occasion, Mr. Flower touched Ms. Johnston on her breasts. His touching was not accidental and Ms. Johnston did not like it at all.

45.

All of Mr. Flower's comments to and touching of Ms. Johnston were heavily tinged with sexual innuendo and made her extremely uncomfortable.  She did not welcome any of his advances; she always refused them.

46.

Ms. Johnston found Mr. Flower's treatment offensive and demeaning.

47.

The offensiveness of the harassment she received from Mr. Flower was made worse by the fact that other male employees stood by and watched it happen rather than doing anything to stop it.  Some even encouraged Mr. Flower's behavior.

48.

Sometimes Ms. Johnston responded to Mr. Flower that he should not be saying those things to her because he is married.  He responded that it didn't matter – he would just push his wife, who was previously paralyzed in an accident and uses a wheelchair, "down a hill."  He said this to Ms. Johnston on multiple occasions.

49.

Even though she regularly told him to stop talking to her that way, and made it very clear that she wasn't interested, Mr. Flower continued to make offensive sex-related comments to Ms. Johnston on a near-daily basis.

50.

Ms. Johnston dreaded seeing Mr. Flower at work.  He would walk up to her receptionist desk and she could not avoid him because she was not allowed to leave the desk unattended.

51.

Mr. Flower regularly made sex-related jokes to other employees. He sent perverted text messages including "GIFs" and "memes" to other employees.

52.

Some of the other men would laugh at Mr. Flower's sex jokes, sometimes in front of Ms. Johnston, which made her even more uncomfortable.

53.

Mr. Flower's treatment of Ms. Johnston was offensive both subjectively and objectively, and it was unwelcome.

54.

Mr. Flower was not a management-level employee of Pye Cars; he was Ms. Johnston's co-worker.

<u>Owner Mr. Pye's Sex-Related Comments and Flippant Remarks About Sexual Harassment</u>

55.

Mr. Pye also made sex-related comments to Ms. Johnston, though they were not as much directed toward Ms. Johnston.

56.

Mr. Pye's comments were offensive because they demonstrated to Ms. Johnston that he not only did not object to sexual harassment in the workplaces that he owned and operated, but that he even condoned it.

57.

As an example, of Mr. Pye's comments, one time he said to Ms. Johnston something like "Can I tell you that you look good in that dress?  Oh, no!  That would be sexual harassment!"  His tone was sarcastic and demeaning.

58.

During Ms. Johnston's employment, a sexual harassment lawsuit filed by another former employee was pending.  Ms. Johnston overheard Mr. Pye talking about the case and heard him refer to the plaintiff as a "whore" and say, "I've got more money than her so I'll eventually win."

59.

Under Mr. Pye's leadership, Pye Cars and/or other dealerships owned by him have had knowledge that a current or former employee had sexually harassed other employees, and had either not terminated or had re-hired the accused employee(s) without any investigation into the allegations.

60.

Mr. Pye does not take sexual harassment seriously as a workplace problem. To the contrary, he condones it and even engages in it himself.

13

<u>Management's Knowledge of and Lack of Response to Mr. Flower's Unlawful
Treatment of Ms. Johnston</u>

61.

A number of management-level employees were aware of the ongoing
harassment of Ms. Johnston by Mr. Flower.

62.

David Hancock, who works in the Parts Department, sat near to Ms.
Johnston's desk and observed Mr. Flower's harassment of Ms. Johnston on a
regular basis.

63.

Michael Autry also observed Mr. Flower's harassment of Ms. Johnston.

64.

Ms. Johnston herself complained to management several times about Mr.
Flower's demeaning and highly offensive sexual harassment of her.  Managers to
whom she complained include Bill Reed, Brad [last name unknown], and Jeff
Middlebrooks.

65.

Pye Cars never did anything to investigate or otherwise take action in
response to Ms. Johnston's complaints regarding the harassment she was enduring,
until what turned out to be the last day of Ms. Johnston's employment.

66.

Pye Cars had a harassment policy during Ms. Johnston's employment but it was not publicized or made available to employees.  Ms. Johnston signed the harassment policy at the inception of her employment then never saw it again.

67.

Pye Cars' policy identified two employees who could receive harassment complaints:  Mr. Greg Black and Ms. Kim Gaston.  Neither Mr. Black nor Ms. Gaston was regularly present at Ms. Johnston's workplace during her employment.

68.

On or about March 22, 2018, Mr. Flower again made sexual overtures to Ms. Johnston, to the effect that he wanted to see her clothes laying on the floor next to his bed.

69.

Ms. Johnston again asked him to stop saying those things and reminded him of his wife; Mr. Flower again responded that she didn't matter because he could push his wife down a hill.

70.

Just after Mr. Flower said these things to Ms. Johnston, Mr. Jeff Middlebrooks, Finance Manager, walked by her desk and observed that she was visibly very upset.

71.

Mr. Middlebrooks asked Ms. Johnston what was wrong, and she told him what Mr. Flower had just said.

72.

Mr. Middlebrooks told Ms. Johnston that he would take care of it.  Ms. Johnston understood this to mean that he would make sure upper management knew of Mr. Flower's harassment and did something to stop it.

73.

Mr. Middlebrooks immediately informed Sales Manager Gene Roberts about Ms. Johnston's complaint of sexual harassment.

<u>Pye Cars' Termination of Plaintiff's Employment the Same Day that She Complained of Sexual Harassment</u>

74.

On the same day that Ms. Johnston expressed her concern about harassment to Mr. Middlebrooks, within a few hours, she was called to the office by Mr. Greg Black.  An office manager named Margaret was present.

75.

Mr. Black informed Ms. Johnston that her employment was terminated.  Ms. Johnston asked if this was because she had complained about harassment.  Mr. Black said that it was not – that it was because she had allegedly been rude to an insurance broker on the phone.

76.

Ms. Johnston received a Georgia Department of Labor Separation Notice in that same meeting, but it did not say anything about her alleged rudeness.  The Separation Notice stated that Ms. Johnston was terminated due to "lack of work."

77.

Ms. Johnston had recently had several conversations with Pye Cars' insurance agent or broker, because Ms. Johnston, who is diabetic, needed help with how to obtain the insulin that she needed using her employer-provided health insurance benefits.

78.

The insurance agent had advised Ms. Johnston on which plan to select, but then it did not cover her insulin and she could not afford to get it without insurance coverage.

79.

Ms. Johnston therefore sought the agent/broker's assistance, but the agent/broker was not helpful.  She was rude to Ms. Johnston.

<u>Ms. Kim Gaston's Retaliatory Threats of Ms. Johnston Just After Pye Cars Terminated Ms. Johnston's Employment</u>

80.

Later the same day that Pye Cars terminated Ms. Johnston's employment, she received a phone call from Ms. Kim Gaston.

81.

Ms. Gaston is a senior management employee of Pye Cars and is also the unmarried long-term life partner of owner/Defendant Mr. Pye.

82.

When Ms. Gaston got Ms. Johnston on the phone, one of the very first things she said to Ms. Johnston was that if Ms. Johnston did not stop saying that she was terminated because she complained of sexual harassment, that Ms. Gaston would "take legal action."  Ms. Johnston understood this to be a threat to not pursue her rights relative to the harassment that she suffered or Pye Cars would sue her.

83.

Ms. Johnston stated to Ms. Gaston in response, "I don't appreciate you calling and threatening me."

84.

Ms. Johnston tried to be nice to Ms. Gaston for the rest of that phone call because she was fearful of the threats that Ms. Gaston was making to her.

85.

Ultimately, Ms. Johnston overcame her fear about Ms. Gaston's threats and pursued her rights by filing an EEOC Charge and eventually filing this lawsuit.

## COUNT I (AGAINST PYE CARS AND MR. PYE)
## VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT

86.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

87.

Defendants, as joint employers, have violated the FLSA, 29 U.S.C. § 207, by failing to pay overtime wages for the time Ms. Johnston worked in excess of 40 hours in each work week.

88.

Defendants' actions, policies, or practices violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff at the required overtime rate.

89.

Defendants knew, or showed reckless regard for the fact that they failed to pay overtime compensation as required under the FLSA.

90.

Defendants required Plaintiff to work overtime hours off the clock by disallowing her from leaving her desk at lunch while at the same time requiring her to clock out during lunchtime.

91.

Defendants' conduct as alleged herein was willful and in bad faith.

92.

Due to Defendants' willful violations of the FLSA, Plaintiff is entitled to recover her unpaid overtime wages, plus liquidated damages in an equal amount, her attorney's fees, and the costs of this litigation, pursuant to FLSA § 16, 29 U.S.C. § 216.

## **COUNT II (AGAINST PYE CARS) SEXUAL HARASSMENT IN VIOLATION OF TITLE VII**

93.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

94.

Defendant, through the conduct of Mr. Flower, discriminated against Plaintiff because of her sex by sexually harassing Plaintiff.

95.

The harassment inflicted upon Plaintiff by Mr. Flower was unwelcome and was based on her sex.

96.

The harassment that Plaintiff experienced was sufficiently severe and pervasive, objectively and subjectively, as to alter the terms and conditions of her employment and create an abusive and hostile working environment.

97.

Pye Cars had actual knowledge of the harassment inflicted by Mr. Flower.

98.

Pye Cars had constructive knowledge of the harassment inflicted by Mr. Flower.

99.

Plaintiff complained to several superiors about the harassment she was experiencing, but nothing was done about it until the day that Pye Cars also terminated her employment.

100.

Pye Cars failed or refused to take action to correct the harassing behavior of Mr. Flower and failed to take all reasonable acts to eliminate sex discrimination from the workplace and prevent it from occurring in the future.

101.

Mr. Flower's sexual harassment of Plaintiff is causally connected to the termination of her employment, which occurred the same day she resisted his

advances and complained of his repeated unwelcome sexual comments and propositions.

102.

The sexual harassment that Plaintiff experienced caused her to suffer humiliation, emotional distress and mental suffering.

103.

Pye Cars' discrimination against Plaintiff in the form of sexual harassment caused her to suffer financial losses in the form of lost wages and benefits among other things, all as to be proven at trial.

## COUNT III (AGAINST PYE CARS)
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

104.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

105.

Plaintiff is a member of a protected class as a woman.

106.

Plaintiff was qualified for the position she held with Pye Cars.

107.

Defendants' actions in condoning sexual harassment and allowing sexual joking and teasing to occur in the workplace evidence Defendants' bias against women based on sex.

108.

Pye Cars subjected Plaintiff to an adverse employment action when it terminated her employment.

109.

Plaintiff was treated differently than similarly situated male employees.

110.

Pye Cars' multiple and conflicting proffered reasons for terminating Plaintiff's employment – her alleged "rude" comments to an insurance agent and "lack of work" – are a pretext for sex discrimination.

111.

Plaintiff suffered damages as a result of Pye Cars' discriminatory acts, including lost wages and benefits, humiliation, emotional distress, and mental suffering, all as to be proven at trial.

## COUNT IV (AGAINST PYE CARS)
## RETALIATION IN VIOLATION OF TITLE VII

112.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

113.

Plaintiff engaged in activity protected under Title VII when she complained to Jeff Middlebrooks, Brad, Bill Reed, and other management employees regarding the discrimination and harassment that she was experiencing.

114.

The very same day as her last complaint of discrimination and harassment, Defendant Pye Cars terminated Plaintiff's employment, which termination constitutes an adverse employment action.

115.

There is a causal connection between Plaintiff's complaints of discrimination and harassment and the termination of her employment, which thereby constitutes retaliation.

116.

As a result of Defendant Pye Cars' retaliation as described herein, Plaintiff suffered damages including lost wages and benefits, humiliation, pain and suffering, and other damages all as to be proven at trial.

117.

The day after her termination, Ms. Gaston, on behalf of Pye Cars, threatened "legal action" against Ms. Johnston if she maintained to anyone else that she had been terminated because she complained of sexual harassment.

118.

Ms. Gaston's threats to take "legal action" against Ms. Johnston if she continued to pursue her rights constitutes a further act of retaliation by Pye Cars, as such threats well might dissuade a reasonable worker from making or supporting a charge of discrimination with the EEOC.

119.

Ms. Gaston's retaliatory threats caused Ms. Johnston additional humiliation and emotional distress, and other damages, all as to be proved at trial.

## COUNT V (AGAINST PYE CARS)
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

120.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

121.

Defendant Mr. Flower engaged in sexually offensive conduct intentionally directed at Plaintiff Ms. Johnston.

25

122.

Mr. Flower's treatment of Plaintiff Ms. Johnston was designed to, and did, cause her severe emotional distress.

123.

Ms. Johnston complained to supervisors about the treatment she was receiving from Mr. Flower, but no one did anything about it, which only made her emotional distress become worse.

124.

The emotional distress Ms. Johnston suffered was severe.

125.

Defendant Pye Cars is vicariously liable for the emotional distress that Mr. Flower intentionally inflicted on Ms. Johnston.

126.

Ms. Johnston suffered damages as a result of the intentional infliction of emotional distress for which Defendant Pye Cars is liable.

## COUNT VI (AGAINST PYE CARS)
## ASSAULT AND BATTERY

127.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

128.

Defendant Mr. Flower intentionally touched Plaintiff offensively, including on the breasts.

129.

Defendant Mr. Flower also threatened to touch Plaintiff offensively, and indicated that he had the present ability to do so.

130.

Mr. Flower's offensive and unwelcome touching of Plaintiff, and his threats of offensive touching, were demeaning and caused her mental and emotional distress.

131.

Defendant Pye Cars is vicariously liable for Mr. Flower's assault and battery of Ms. Johnston.

## <u>COUNT VII (AGAINST PYE CARS)</u><br><u>NEGLIGENT RETENTION</u>

132.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

133.

Defendant Pye Cars owed a duty to Johnston as an employee to exercise ordinary care not to hire or retain an employee that it knew or should have known posed a risk of harm to others.

134.

Defendant Pye Cars had knowledge that Mr. Flower and other male employees posed a risk of harm to Johnston and to other female employees due to a known propensity to engage in sexual harassment and to treat women in demeaning and derogatory ways.  Alternatively, Defendant Pye Cars should have had such knowledge.

135.

Because of its knowledge or constructive knowledge of the risk posed to Plaintiff by Mr. Flower and other male employees, it was foreseeable to Pye Cars that Johnston would suffer harm if it retained the employees who posed such a risk.

136.

Pye Cars retained Mr. Flower and other male employees that it knew posed a risk of engaging in sexual harassment and other conduct causing distress to Ms. Johnston and other female employees, notwithstanding its knowledge of the risk of such harm.

137.

Pye Cars' retention of Mr. Flower and other male employees who have engaged in harassment of Plaintiff and other employees and caused Plaintiff emotional distress has caused them further, additional emotional distress and injury.

138.

Pye Cars is liable for the damages Ms. Johnston has suffered as a result of its negligent retention of Mr. Flower and other male employees who have harassed Plaintiff and other female employees and caused them emotional distress.

139.

Pye Cars' tortious conduct as alleged in this Complaint is willful and/or reflects such an entire want of care sufficient to raise a presumption of conscious indifference to consequences, so as to entitle Ms. Johnston to an award of punitive damages.

## COUNT VIII
## ATTORNEY'S FEES

140.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

141.

Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, and as a result Plaintiff is entitled to recover all of her attorney's fees pursuant to O.C.G.A. § 13-6-11 and other applicable state and federal law.

142.

Plaintiff is entitled to recover her reasonable attorney's fees and costs of litigation under the FLSA, 29 U.S.C. § 216 and other applicable law.

143.

Plaintiff is entitled to recover her reasonable attorneys fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and other applicable law.

## COUNT IX (AGAINST PYE CARS) PUNITIVE DAMAGES

144.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

145.

The actions of each Defendant showed willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, so as to entitle Plaintiff to recover punitive damages under O.C.G.A. § 51-12-5.1, Title VII, and other applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and requests the following relief:

a) A declaratory judgment that Defendants have violated the FLSA, 29 U.S.C. § 201, *et seq.*;

b) A judgment awarding Plaintiff her unpaid wages pursuant to 29 U.S.C. § 207, liquidated damages as provided by 29 U.S.C. § 216, court costs and attorney's fees as provided by 29 U.S.C. § 216, and all other remedies allowed under the FLSA;

c) A judgment enjoining Defendants from engaging in unlawful employment practices and awarding Plaintiff back pay and either reinstatement or front pay in lieu thereof as provided by Title VII, 42 U.S.C. § 2000e-5 and other applicable law;

d) A judgment awarding Plaintiff compensatory and punitive damages, in an amount to be determined by the enlightened conscience of the jury;

e) Award Plaintiff her attorney's fees;

f) Award Plaintiff pre-judgment and post-judgment interest; and

g) Award Plaintiff all other and further relief as available under applicable law and as this Court deems just and proper.

Respectfully submitted this 18th day of June, 2018.

/s/ Lisa D. Taylor
Lisa Durham Taylor
Georgia Bar No. 235529
lisa@durhamtaylor.com
**DURHAM TAYLOR LLC**
1650 Whippoorwill Road
Watkinsville, Georgia  30677
Telephone:  (770) 235-1117
Facsimile:  (706) 478-6797

John T. Stembridge
Georgia Bar No. 678605
john@stembridgelaw.com
**STEMBRIDGE LAW LLC**
2951 Piedmont Rd., Suite 300
Atlanta, Georgia  30305
Telephone:  404-604-2691

**Attorneys for Plaintiff Melanie Johnston**

32